Marshall, C. J.
The judgment of the court of appeals was entered upon the theory that the court of common pleas in the divorce proceeding had no authority to enter an order that Mamie Sanborn convey her interest in the real estate to the husband, for the reason that the divorce was granted for the husband’s aggression and the situation was therefore controlled by Sections 11990, 11991 and 11992, General Code. The first section provides, in substance, that when a divorce is granted because of the husband’s aggression the wife by force of the judgment shall be restored to all her lands not previously disposed of, that the husband shall be barred of all dower therein, and that she shall further be allowed reasonable alimony out of her husband’s property. The third of those sections provides that “when it appears to the court that the husband is the owner of little or no property and the wife is the owner of lands or personal ■estate, or both, the court may adjudge to the husband such share of her real or personal property, or both, or may decree to him such sum of money out of her estate, payable in gross or by install- *645 meats, as it deems just, having due regard to all the circumstances of the parties.”
It is not necessary to a discussion of this controversy that this court express any opinion as- to the power and authority of the court of common pleas to order in the divorce suit, a conveyance of the wife’s interest to the husband. The decree was entered and neither1 appeal nor error was prosecuted therefrom, and the order became final; and the only questions with which this court is now concerned are whether that decree is subject to collateral attack, and whether Mamie Sanborn is estopped by her conduct from attacking that decree.
Upon the first of these questions, whether the judgment in the divorce suit relative to the real estate is subject to collateral attack in the partition proceedings, we point to the authority of the case Heflebower v. Heflebower, 102 Ohio St., 674. If there is any distinction between the two oases, the distinction is entirely favorable to the claims of Eodney J. Sanborn. Heflebower had acquiesced in the judgment for several years, and had made many payments of installment alimony, and upon this ground alone this court decided that he would not be heard after the lapse of many years to assert the invalidity of the judgment. In the instant case the situation of Mrs. Sanborn is much more unfavorable to her. She had for five years not only acquiesced in the judgment, but had received installment payments of $25 per month during all of that period.
Another case decided by this court which seems to have much force as an authority is Julier v. Julier, 62 Ohio St., 90. Upon the authority of those two cases, and for the reasons stated in the opinions in *646 those eases, the judgment of the court of appeals must be held to be erroneous even on the theory that the decree relative to the real estate in the divorce proceeding’ was entirely void. We cannot, however, say that that judgment was invalid, because a careful reading of the finding of facts made by the court of appeals discloses that the trial court in the divorce proceeding may have been justified in entering that decree on the ground that Mamie Sanborn had no interest in the real estate. It was alleged in the pleading of Eodney J. Sanborn that he had paid the entire consideration, which was denied in the answer, and that question was an issue in the case. We do not have before us the evidence and therefore cannot say that the court was not justified in finding in favor of Eodney J. Sanborn upon that issue. It is also possible that the order may have been made upon the authority conferred by Section 11992, and that the court may have found that “the husband is the owner of little or no property and the wife, is the owner of lands or personal estate, or both,” etc.
Without determining the validity or invalidity of the divorce decree, but assuming that the decree was erroneous, it must be' found by this, court that the court of appeals erred in' rendering judgment in favor of Mrs. Sanborn on the issue of estoppel. An estoppel is pleaded in the instant case and is one' of the live issues, and if we consider the findings made by the court of appeals on that issue there can be no other sound conclusion than that Mamie Sanborn was estopped from asserting the invalidity .of the divorce decree.
*647 An estoppel is defined as a bar which, precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial officers or by the act of the party himself. If the estoppel is by the conduct of a person, it is one of the essential elements that his conduct must have induced another to believe in the existence of a particular state of facts and to act thereon to his prejudice. If these well-settled definitions and principles be applied to the instant case it is difficult to conceive of any case where the fit would be more perfect. This particular case, the issues of which had their origin in judicial proceedings, has all the essential elements of estoppel by conduct, and if this judgment is not entirely void, as being beyond the jurisdiction of the court to render, the case has all the essential elements of estoppel by judgment.
There are several authorities which are quite pertinent to this question. In the case of Hoffmire v. Holcomb, 17 Kans., 378, the following principle is declared in the syllabus: “A party holding the fee in mortgaged premises, and against whom a decree of foreclosure is entered, cannot, after voluntarily taking the surplus arising from the sale of said premises upon such decree, maintain a proceeding in this court to set aside the decree of sale. The receipt of such surplus is a waiver of any errors, if errors there be, in the proceedings.”
The case of Pursley v. Hays, 17 Ia., 310, holds: “The receipt by minors after attaining their majority of the proceeds arising from the sale of their real estate, during their minority, by their guardian, with full knowledge of all the facts in regard to such *648 sale, operates as a ratification thereof; and estops them from denying its validity. ’ ’
In the case of Lee v. Gardiner, 26 Miss., 521, we quote the following from the syllabus: “The heirs of the deceased having ratified and acquiesced in the sale, and received their portion of the proceeds; they are estopped from denying the validity of the sale.”
In all the above cases it is unnecessary to state the facts, because the brief statements of law in the syllabi clearly indicate the proceedings upon which those declarations were founded.
Another case is that of Sage v. Finney, 135 S. W. Rep., 996 (156 Mo. App., 30), the ninth paragraph of the syllabus of which reads: “Where a person accepts benefits under invalid judicial proceedings, he is estopped from asserting their invalidity, since that would be inconsistent with his acceptance of benefits.”
We are not without authority on this subject among the former decisions of this court. In the case of Beall v. Price, 13 Ohio, 368, the same principle was very concisely declared: “Where a void decree is made by a Virginia court, for the sale of Ohio lands, one of the heirs who assents to the decree and the sale, and acts as commissioner to carry it into execution, passes his own title in equity.”
In the case of Windsor v. McVeigh, 93 U. S., 274, at page 283, the court quotes with approval the following sweeping declaration of Mr. Justice Swayne, in the case of Cornett v. Williams, 20 Wall., 226, at page 250: “Jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be *649 held conclusive of the rights of the parties, unless impeached for fraud.”
The latest and most authoritative declaration of principles upon facts which find a striking parallel is the case of Hopper v. Nicholas, just decided by this court and reported concurrently herewith ante, 292, in which it was decided that proceedings' in New York state, though unauthorized, in which parties participated to their substantial advantage, create an estoppel which will be a bar to subsequent proceedings in which a different conclusion is sought in the state of Ohio.
We have therefore reached the conclusion that the court in the divorce proceedings had jurisdiction over the subject-matter of this action, that all parties were before the court in that case and submitted their controversy, including the title to the real estate in controversy in this action, that the court made orders in that case beneficial to each of the parties to the action, that Mamie Sanborn benefited by the payment to her of substantial sums of money paid by Rodney J. Sanborn, that the judgment thereby resulted to his disadvantage by the same amount, that no error or appeal was prosecuted from such judgment nor was the judgment brought in question even by collateral attack for a period of more than five years; and the court of appeals in this present controversy having made specific findings of all of the foregoing facts this court cannot do otherwise than declare that the allegations of the answer in the instant case plead a good defense of estoppel and that the findings made by the court of appeals fully sustain all of the elements necessary to establish that estoppel. The judgment of the *650 court of appeals will therefore be reversed, and that court will be ordered to enter the judgment which it should have rendered in favor of the plaintiff in error.

Judgment reversed.

Hough, Wanamaker, Robinson, Jones, Matthias and Clark, JJ., concur.-